**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

GREATAMERICA LEASING
CORPORATION,

    Plaintiff,

vs.

AVERY AIR CONDITIONING/
HEATING & A-ABACA SERVICES,
INC.,

    Defendant.

No. 11-CV-66-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A. Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B. Avery's Relationship with Unified 360* . . . . . . . . . . . . . . . . . . *3*
    *C. Financing Agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*V.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *A.*   *Timeliness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *B.*   *Validity of the Agreement* . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *C.*   *Venue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *1.*   *Dismissal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *2.*   *Transfer* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
            *a.*   *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . *11*
            *b.*   *Mandatory forum-selection clause* . . . . . . . . . . . . *11*
            *c.*   *28 U.S.C. § 1404(a) factors* . . . . . . . . . . . . . . . . *12*
                *i.*   *Convenience of the parties* . . . . . . . . . . . . *12*
                *ii.*  *Convenience of the witnesses* . . . . . . . . . . . *13*
                *iii.* *Interests of justice* . . . . . . . . . . . . . . . . . *15*
            *d.*   *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*VI.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

The matter before the court is Defendant Avery Air Conditioning/Heating & A-Abaca Services, Inc.'s ("Avery") "Motion to Dismiss or Transfer Venue" ("Motion") (docket no. 13).

## II. PROCEDURAL BACKGROUND

On June 23, 2011, Plaintiff GreatAmerica Leasing Corporation ("GreatAmerica") filed a Complaint (docket no. 1) against Avery, alleging breach of contract. On August 19, 2011, GreatAmerica filed a "[Motion] for Entry of Default and Default Judgment" (docket no. 6). On that same date, the Clerk of Court entered default and default judgment in favor of GreatAmerica against Avery. *See* Default Entry and Default Judgment (docket no. 7) at 1. On August 30, 2011, GreatAmerica filed a "Motion to Set Aside Default Entry and Default Judgment" (docket no. 8). On August 31, 2011, the court entered an Order (docket no. 9) setting aside the default entry and default judgment and granting Avery sixty days in which "to locate Iowa counsel, file an Application for Admission Pro Hac Vice, enter an appearance in this matter and file an answer to the Complaint." Order at 1.

On November 16, 2011, Avery filed the Motion. On December 2, 2011, GreatAmerica filed a Resistance (docket no. 15). On December 8, 2011, Avery filed a Reply (docket no. 16). Neither party requests oral argument on the Motion. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States . . . ."); *see also* Motion at 2 ("Avery admits that subject matter jurisdiction exists because there is complete diversity of citizenship between [GreatAmerica] and Avery and the amount in controversy exceeds [$75,000] . . . ."). The court is satisfied that subject matter jurisdiction exists.

## IV. FACTUAL BACKGROUND

### A. Players

GreatAmerica is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. GreatAmerica "provides financing alternatives to certain qualified customers of equipment vendors wishing to lease business equipment." Declaration of Steve Louvar, GreatAmerica App'x (docket no. 15-1) at 1. Avery is a Texas corporation with its principal place of business in Dallas, Texas.

Unified 360, a nonparty in this action, is a Texas limited liability company with its principal place of business in Dallas, Texas. Unified 360 may have gone out of business at some point during 2011.

### B. Avery's Relationship with Unified 360

Avery negotiated with Unified 360 for a new telephone system and "Avery and Unified 360 agreed to a scope and price" for the new system. Motion at 5. Avery then applied for financing of the telephone system with GreatAmerica. Unified 360 notified Avery that GreatAmerica approved Avery's request for financing. Unified 360 provided Avery with the financing documents, and Avery executed two agreements with GreatAmerica. At the time Avery executed the documents, "Unified 360 told Avery that a technical team from Unified 360 would be contacting Avery to discuss and make plans for installation of the specified systems." Motion at 5. However, when Avery reviewed the system with the Unified 360 technical team, the technical team was unaware of Avery's previous system specifications. Avery maintains that the negotiation process appeared to be starting over.

3

After continued communications, Avery determined that Unified 360 was unable or unwilling to provide the original system specifications at the agreed-upon price. Consequently, Avery maintains that it canceled the agreement with Unified 360. Avery maintains that it did not have any further communications with Unified 360 after it canceled the agreements and that Unified 360 did not deliver or install any systems or equipment for Avery.

### C. Financing Agreements

On or about December 21, 2010, Avery and GreatAmerica entered into an "Agreement" and a "Progress Payments Agreement." *See* Resistance at 2; Exhibits 1 and 2, GreatAmerica App'x at 4-7. Under the terms of the Agreement, GreatAmerica agreed to pay Unified 360 for the office equipment that Avery sought to obtain from Unified 360. In exchange, Avery agreed to pay GreatAmerica in monthly installments. The Agreement was scheduled to begin on the date Unified 360 delivered the equipment to Avery. Consequently, GreatAmerica's duty to pay Unified 360 did not begin under the Agreement until the day Unified 360 delivered the equipment.

In contrast, under the Progress Payments Agreement, Avery contracted for GreatAmerica to make advance payments to Unified 360 for the cost of the office equipment before Unified 360 actually delivered the equipment. The Progress Payments Agreement provides, in relevant part:

> Customer has entered into an agreement (the "Agreement") with GreatAmerica in connection with Customer's acquisition or use of the telecommunications equipment and/or system(s) described in the Agreement (the "System") from Unified 360 ("Vendor"), which Agreement is identified in GreatAmerica's records as agreement (or application) no. 653718. Under the terms of the Agreement, the Agreement will not commence until the System has been installed by Vendor and accepted by Customer (such date referred to herein as the "Agreement Commencement Date"). Customer desires that GreatAmerica make advance payments ("Progress Payments") to Vendor for

4

> the cost of the System prior to the Agreement Commencement Date. It is a condition precedent to GreatAmerica's willingness to make any such Progress Payments that Customer execute and deliver this Progress Payments Agreement.

Exhibit 2, GreatAmerica App'x at 6.

The Progress Payments Agreement directs and authorizes GreatAmerica to make progress payments to Unified 360 and states, "If Customer directs GreatAmerica, via certified mail, to stop making additional Progress Payments, GreatAmerica will not make any additional Progress Payments to Vendor from and after the date such direction is received by GreatAmerica." *Id*. The Progress Payments Agreement states:

> CUSTOMER'S OBLIGATION TO PAY ALL AMOUNTS HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, INCLUDING IF VENDOR FAILS TO INSTALL THE SYSTEM OR THE SYSTEM IS DEFECTIVE.

*Id*. at 7.

The Progress Payments Agreement also includes choice of law and forum-selection clauses, stating:

> THIS PROGRESS PAYMENTS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF IOWA. THE PARTIES AGREE THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS PROGRESS PAYMENTS AGREEMENT WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT LOCATED IN CEDAR RAPIDS, IOWA, AND THE PARTIES HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT. EACH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY AND ANY RIGHT TO TRANSFER VENUE.

*Id.*

On December 21, 2010 and December 22, 2010, GreatAmerica performed under the Progress Payments Agreement by making two separate payments to Unified 360 totaling $79,068.00. *See* Exhibit 3, GreatAmerica App'x at 8-9. Avery maintains that it did not know the Agreement or Progress Payments Agreement "still existed" or that Unified 360 accepted payment under the agreements because Avery believed it had previously canceled them through Unified 360. Motion at 6.

## V. ANALYSIS

Avery moves to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that Iowa is an improper venue. Although not stated as a reason for dismissal, Avery also argues that it is not subject to personal jurisdiction in Iowa. In the event the court denies Avery's request to dismiss the action, Avery moves the court to transfer venue to the Northern District of Texas.

GreatAmerica resists, arguing that (1) the motion is untimely; (2) Avery consented to venue and personal jurisdiction in Iowa; and (3) Avery has not met its burden to show that transfer is warranted under 28 U.S.C. § 1404(a).

In its Reply, Avery argues for the first time that the Progress Payments Agreement is invalid because it was canceled and "there was a complete failure of consideration by Unified 360." Reply at 4. Thus, Avery maintains that the Progress Payments Agreement "is invalid for no consideration or at least a failure of consideration." *Id.*

### A. Timeliness

As GreatAmerica points out, the court instructed Avery to file a response to the Complaint within sixty days after the court's August 31, 2011 Order setting aside the default entry and default judgment. Because Avery did not file the Motion until November 16, 2011, the Motion is untimely. In its Reply, Avery sets forth the reasons for its delayed response, namely, counsel's failure to ensure that the deadline was entered correctly in his

6

electronic calendar. Despite Avery's delay in filing the Motion, the court elects to consider the Motion on its merits.

### B. *Validity of the Agreement*

At the outset, the court notes that it need not consider Avery's argument, raised for the first time in its Reply, that the Progress Payments Agreement is invalid. *See Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 872 n.19 (N.D. Iowa 2009) (listing cases) ("The inclusion of a new argument in a reply brief is improper as a matter of motion practice in this court, and, in this circuit." (internal citations omitted)). Regardless, the argument is without merit. Avery submits that it canceled its agreements with Unified 360 and, therefore, its agreements with GreatAmerica should have been canceled as well. However, Avery has not provided the court with any evidence that it canceled the Progress Payments Agreement.

Furthermore, Avery's argument that the Progress Payments Agreement is invalid because Unified 360 failed to deliver the office equipment is also without merit. Avery maintains that the Progress Payments Agreement contained a "condition precedent" and that GreatAmerica's payments to Unified 360 "depend[ed] on Unified 360's performance for valid consideration to be exchanged." Reply at 4. However, Unified 360 is not a party to the Progress Payments Agreement, and the Progress Payments Agreement was not contingent upon Unified 360's delivery of office equipment.

The Progress Payments Agreement states that "Customer desires that GreatAmerica make advance payments ("Progress Payments") to Vendor for the cost of the System prior to the Agreement Commencement Date." Exhibit 2, GreatAmerica App'x at 6. Because the Agreement was to commence upon the delivery of the equipment, it is quite clear that the Progress Payments Agreement was to begin *before* the delivery of the equipment. Additionally, the Progress Payments Agreement states: "CUSTOMER'S OBLIGATION TO PAY ALL AMOUNTS HEREUNDER SHALL BE ABSOLUTE AND

UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, INCLUDING IF VENDOR FAILS TO INSTALL THE SYSTEM OR THE SYSTEM IS DEFECTIVE." *Id.* at 7. This language also demonstrates that the Progress Payments Agreement was to take effect regardless of whether Unified 360 followed through in any separate agreement between Unified 360 and Avery.

Because the language of the Progress Payments Agreement is clear on its face, the court declines to find—as Avery argues for the first time in its Reply—that the Progress Payments Agreement is invalid either because Avery canceled it or because Unified 360's failure to deliver the telephone equipment resulted in a lack of consideration or a failure of consideration.

### C. *Venue*

#### 1. *Dismissal*

Avery maintains that the instant action should be dismissed because Iowa is an improper venue for this diversity suit. "[T]he term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action . . . and does not refer to any grant or restriction of subject-matter jurisdiction . . . ." 28 U.S.C.A. § 1390. The general venue statute, 28 U.S.C.A. § 1391, states, in pertinent part:

> **(b) Venue in General.** –A civil action may be brought in–
>
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or]
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

*Id.* § 1391(b).

For purposes of venue, "an entity . . . , whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). "To determine whether a court has personal jurisdiction over a nonresident defendant, we ask two questions: (1) whether the applicable state long-arm statute . . . is satisfied; and (2) whether a court's exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995).

Iowa's modern Rule providing long-arm authority over a nonresident defendant states:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306. This long-arm Rule extends Iowa's jurisdictional reach to the full extent allowable under the United States Constitution. *See Wells Dairy, Inc. v. Food Movers Int'l., Inc.*, 566 F. Supp. 2d 933, 937 n.3 (N.D. Iowa 2008). Consequently, the court's sole inquiry becomes "whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); *see also McCabe v. Basham*, 450 F. Supp. 2d 916, 922 (N.D. Iowa 2006) ("Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. Therefore, the court shall only examine whether the exercise of personal jurisdiction comports with due process." (internal citations omitted)).

The Supreme Court of the United States has explicitly stated that a litigant may contractually consent to personal jurisdiction in a particular court. *See Burger King Corp.*

9

*v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985). "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (internally quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001) (finding than an insured from Texas impliedly agreed to personal jurisdiction in Minnesota when the insured signed an arbitration agreement with a valid forum-selection clause); *cf. Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006) (finding that a lack of minimum contacts with a forum "cannot render [an] agreed-to forum selection clause unenforceable").

Avery has not argued that the Progress Payments Agreement was not freely negotiated or is otherwise unjust, and there is no evidence in the record to support such a contention. Accordingly, the court finds that Avery consented to personal jurisdiction and venue in Iowa when it signed the Progress Payments Agreement with a forum-selection clause stating that any suit related to the Progress Payments Agreement would be adjudicated in Cedar Rapids, Iowa. *See St. Paul Fire*, 270 F.3d at 624. In fact, in the Progress Payments Agreement, Avery explicitly consented "to personal jurisdiction and venue" in Cedar Rapids, Iowa. Exhibit 2, GreatAmerica App'x at 7 (emphasis omitted). Thus, the court finds that Avery is a resident of Iowa pursuant to 28 U.S.C.A. § 1391(b)(1) and (c)(2), and Iowa is not an improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Accordingly, the court shall deny Avery's request to dismiss the action for improper venue.

### 2. *Transfer*

In the alternative, Avery asks the court to transfer venue to the Northern District of Texas.

### a. Applicable law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In deciding whether to transfer venue, "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). District courts possess "much discretion" in deciding whether to transfer a case. *Id.* at 697. "The statutory language [in 28 U.S.C. § 1404] reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691.

However, a court's evaluation of a transfer motion is not limited to these enumerated factors. *Id.* "[S]uch determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* "[A] valid and applicable forum selection clause in a contract is a 'significant factor that figures centrally in the district court's calculus.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In considering the impact of a forum-selection clause, the Eighth Circuit Court of Appeals has differentiated between those clauses that are "mandatory" and those that are "permissive." *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (finding that a forum-selection clause that did not use the words "shall," "'exclusive,' 'only,' 'must,' or any other terms that might suggest exclusivity" was permissive).

### b. Mandatory forum-selection clause

The forum-selection clause in the Progress Payments Agreement is mandatory. The clause states that "any dispute . . . related to this Progress Payments Agreement will be adjudicated in the federal or state court located in Cedar Rapids, Iowa." Exhibit 2,

11

GreatAmerica App'x at 7 (emphasis omitted). The Progress Payments Agreement also provides that the parties to the agreement consent to personal jurisdiction and venue in Cedar Rapids, Iowa, and waive any right to transfer venue. Thus, the court finds that the language in the Progress Payments Agreement indicates the parties' intent to make Cedar Rapids, Iowa, the exclusive venue for any cause of action arising under the agreement. *Cf. Dunne*, 330 F.3d at 1063 (implying that an action brought under a contract with a mandatory forum-selection clause may only be maintained in the selected forum). "Where, as here, the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." *Servewell Plumbing*, 439 F.3d at 789 (quoting *Bremen*, 407 U.S. at 17). "Only 'some compelling and countervailing reason' will excuse enforcement of a bargained-for forum selection clause." *Id.* (quoting *Bremen*, 407 U.S. at 12).

### c. *28 U.S.C. § 1404(a) factors*

The court will now evaluate the 28 U.S.C. § 1404(a) factors and Avery's arguments to determine whether transfer is warranted despite the mandatory forum-selection clause in the Progress Payments Agreement. In the Motion, Avery argues that the court should transfer venue to the Northern District of Texas because (1) it would be more convenient for the parties; and (2) it would be more convenient, less costly and easier to compel witnesses to testify.

### i. *Convenience of the parties*

In discussing the convenience of the parties, the only argument Avery presents in the Motion is that it intends to bring suit against Unified 360 and several parties associated with Unified 360. Avery maintains that "the burden and inconvenience on Avery to add these additional parties and force the appearance of these additional witnesses to travel to Iowa . . . will clearly exceed the costs and minor inconveniences to [GreatAmerica] should [GreatAmerica] have to travel to Texas to prosecute its claim against Avery." Motion at

10.

At the outset, the court notes that Avery may have waived its right to assert its own inconvenience as a reason to transfer the case. *See GreatAmerica v. Davis-Lynch, Inc.*, No. 10-CV-13-LRR, 2010 WL 2652222, at *7 n.6 (N.D. Iowa June 30, 2010) (noting that a party's "execution of a valid forum selection clause may constitute a waiver of its right to assert its own inconvenience as a reason to transfer the case"). Furthermore, to the court's knowledge, no related case is currently pending in Texas, and Avery has not submitted any explanation as to why Avery cannot be made whole by filing a separate action in Texas against Unified 360. *Cf. id.* at *8-10 (declining to transfer a case to Texas even though a related case was pending in the Southern District of Texas). While the court recognizes that it will undoubtedly be more costly and less convenient for Avery to litigate this action in Iowa, "'[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue.'" *Terra Int'l*, 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Additionally, "mere 'inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause.'" *Servewell Plumbing*, 439 F.3d at 790 (quoting *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999)). "Instead, a party seeking to avoid his promise must demonstrate that proceeding in 'the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 727 (8th Cir. 2001)). The court finds that Avery has failed to make a showing sufficient to demonstrate that litigating this case in Iowa would be so inconvenient as to deprive it of its day in court. Consequently, the court finds that this factor does not support a transfer of venue.

### ii. *Convenience of the witnesses*

The only argument Avery presents regarding the convenience of witnesses is that,

if this case is litigated in Iowa, Avery will have to bear a substantial financial burden for transportation and hotel costs for its witnesses. Avery also implies that, should it elect to add Unified 360 to the action, some of its witnesses may be unwilling to testify.

Generally, a party seeking to transfer an action for convenience of the witnesses "must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover." Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice and Procedure § 3851, at 425 (3d ed. 2007)); *see also Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991) (noting that, in *forum non conveniens* context, "[t]he burden is on the defendant to provide [facts regarding the materiality and importance of the anticipated witnesses' testimony] by way of affidavit or other information"). Furthermore, the fact that this court cannot compel Avery's witnesses to testify in Iowa does not weigh in favor of transfer unless Avery demonstrates "that the witnesses in [Texas] have relevant testimony and that testimony will be inadequate if offered only via deposition." *Medicap*, 416 F. Supp. 2d at 688.

In the Motion, Avery does not make any attempt to identify its witnesses or what their testimony will be. Additionally, other than suggesting that transportation and hotel costs will be expensive, Avery does not explain why it will be inconvenient for its witnesses to testify in Iowa. In its Reply, Avery lists six Avery employees that it states were "involved with the Unified 360 transaction" and lists four Unified 360 employees that it plans to sue. Reply at 6. However, Avery does not state how these witnesses are relevant for purposes of this contract dispute between Avery and GreatAmerica. Similarly, Avery has not made any showing that there are relevant witnesses in Texas who are unwilling to appear in Iowa and whose testimony would be insufficient if offered only through deposition. Consequently, the court finds that Avery has not made a sufficient showing that its witnesses would be inconvenienced if this case proceeds in Iowa, and

therefore, this factor does not support a transfer of venue.

### iii. *Interests of justice*

Although Avery does not argue that the instant action should be transferred under the "interests of justice" factor, courts considering this factor weigh a wide variety of considerations, including:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l*, 119 F.3d at 696 (listing factors with approval and noting that they "parallel the factors that courts typically analyze under [§] 1404(a)").

The Supreme Court has recognized the importance of judicial economy in the transfer analysis:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

*Cont'l Grain Co. v. The Barge FBL-585 & Fed. Barge Lines, Inc.*, 364 U.S. 19, 26 (1960).

> Accordingly, courts frequently transfer cases "to a forum in which other actions that arose from the same transaction or event as that at issue in the transferor court or were related to them in some fashion were pending." 15 Wright, Miller & Cooper, *supra* § 3854, at 252; *see also Farm Boy Co-Op & Feed Co., LLC v. Red River Clothing, Inc.*, No. 09-2936, 2010 WL 935747, at *3 (D. Minn. Mar. 12, 2010) ("Courts have thus granted transfers to districts where related actions are already pending to permit cases to be consolidated into one proceeding."). "However, courts have denied motions to

> transfer . . . where the two cases at issue: (i) do not involve the same facts, transactions, or occurrences; (ii) do not involve the same parties; or (iii) do not possess complete identity of legal issues." *NBA Props., Inc. v. Salvino, Inc.*, No. 99 Civ. 11799 AGS, 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000) (internal citations and quotation marks omitted).

*Davis-Lynch*, 2010 WL 2652222, at *9 (internal citations altered).

Avery maintains that it intends to file third party claims against Unified 360 and other individuals associated with the company. However, to the court's knowledge, no related case is currently pending in Texas. While the court recognizes that the instant action may share some factual overlap with Avery's potential third party claims against Unified 360, such overlap is limited. The claims Avery intends to file against Unified 360 appear to involve fraudulent conduct, while the instant action involves only a breach of contract. Additionally, Avery's claims in an action against Unified 360 are unlikely to have any impact on the claims in the instant action in light of the provision in the Progress Payments Agreement, which states, "CUSTOMER'S OBLIGATION TO PAY ALL AMOUNTS HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, INCLUDING IF VENDOR FAILS TO INSTALL THE SYSTEM OR THE SYSTEM IS DEFECTIVE." Exhibit 2, GreatAmerica App'x at 7.

Avery has not alleged any misconduct by GreatAmerica. Additionally, Avery fails to explain why GreatAmerica would be a necessary party in the action that it intends to file against Unified 360. As the party asserting that its intent to file third party claims against Unified 360 is a reason for transfer, it is incumbent upon Avery to provide the court "with detailed information about the cases that supposedly are related." 15 Wright, Miller & Cooper, *supra* § 3854, at 271. Because Avery has failed to demonstrate that the instant

action is sufficiently related to the not-yet-filed third party claims that it intends to file against Unified 360, the court declines to find that this factor supports a transfer

Moving to the next "interests of justice" factor, a plaintiff's choice of forum is generally entitled to "considerable deference" in the transfer analysis. *Terra Int'l*, 119 F.3d at 695. "However, courts give that choice 'significantly less deference when (1) plaintiff does not reside in the selected forum, or (2) the transaction or underlying facts did not occur in the chosen forum.'" *Davis-Lynch*, 2010 WL 265222, at *8 (quoting *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999)). Here, GreatAmerica is a resident of its chosen forum. Although it is unclear on this record, it appears that Avery signed the contract in Texas. However, it also appears that GreatAmerica signed the contract in Iowa and that GreatAmerica fulfilled its responsibilities under the contract, namely paying Unified 360, from its bank in Cedar Rapids, Iowa. *See* Exhibit 3, GreatAmerica App'x at 8-9. Accordingly, the court finds that GreatAmerica's choice of forum is entitled to some deference and that this consideration weighs against transfer.

The parties do not argue, and the record does not reflect, that either party will be unable to obtain a fair trial or enforce a judgment in either Iowa or Texas. Likewise, there do not appear to be any conflict of law issues that would make either forum more appropriate. Accordingly, the court finds these factors neutral in the transfer analysis. Furthermore, Avery's argument that its costs will be sufficiently greater than GreatAmerica's costs if this action is litigated in Iowa is not supported by the record, in light of the fact that GreatAmerica's costs would also be significant if forced to litigate its action in Texas. Thus, the court finds that this factor is also neutral.

In considering the last factor, the court notes that the Progress Payments Agreement provides that it "shall be governed by the laws of the State of Iowa." Exhibit 2, GreatAmerica App'x at 7 (emphasis omitted). Therefore, Iowa law governs the parties'

contractual dispute and the current forum would provide the potential benefit of "having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. The court finds that this factor weighs against transfer.

### *d. Summary*

Having considered each of the factors under 28 U.S.C. § 1404(a), the court concludes that the mandatory forum-selection clause in the Progress Payments Agreement is enforceable and that transfer is inappropriate.

### *VI. CONCLUSION*

In light of the foregoing, the Motion to Dismiss or Transfer Venue (docket no. 13) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 10th day of February, 2012.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA